**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DION SEAN FIRST,<br><br>Defendant. | **CR 25-63-GF-BMM**<br><br><br>**ORDER ON FIRST'S MOTION TO SUPPRESS** |

**INTRODUCTION**

A Grand Jury Indicted Dion Sean First ("First") with one count of sexual abuse in violation of 18 U.S.C. §§ 1153(a) and 2242(2)(B). (Doc. 1.) First seeks to suppress evidence seized through penile swabs that derived from First's arrest followed a warrantless entry and search of his residence. (Doc. 45.) The Government opposes. (Doc. 50.) The Court held a hearing on March 10, 2026. (Doc. 57.)

**BACKGROUND**

Local 911 dispatch received a call in the afternoon of January 10, 2024, from Jane Doe stating, "I was just raped, I woke up and felt someone on top of me." (Doc. 29 at 1.) Law enforcement responded to the residence on the Fort Peck Reservation where Jane Doe identified First as the person who allegedly had raped her. (*Id*. at 1-2.) Jane Doe was First's cousin and had been visiting the residence. (*Id*. at 2.) First,

1

Doe, and their family had been drinking in the morning. (Doc. 22 at 2.)

Law enforcement officers arrived at the residence within five minutes of the 911 call to take a report from Doe. (Doc. 50 at 3.) Doe was walking out in the snow to the patrol vehicle carrying her shoes when officers arrived and Doe appeared to have been crying. (*Id*.) Officers asked Doe to describe the incident. (*Id*.) Doe described the incident. (*Id*.) Doe asked the officers if they would need the clothing she had been wearing during the incident and officers responded that they would need the clothes. (*Id*.)

Doe told the officers she was going to go inside the residence to retrieve the clothes and the officers accompanied her into the house. (*Id*.) Doe walked into the bathroom and collected her clothing off the floor. (*Id*.) An officer passed First in the kitchen. (*Id*.) First then walked back to the area where one officer and Doe were located and then returned to the kitchen. (*Id*.) Doe identified First to the officers as the person who had assaulted her and the officers placed First under arrest. (*Id*.) The officers arrested First within five minutes of having arrived on the scene. (*Id*.) The officers did not conduct a search of the residence at the time. (*Id*.)

Tribal law enforcement officers immediately took First to the tribal jail. (Doc. 29 at 2.) The Court's previous order on First's earlier motion to suppress the penile swab describes in depth the details of the penile swab. (Doc. 36.) The Court will not recount these details but notes that the Court determined that First had consented to

the penile swab. (*Id*.) The FBI determined from the penile swabs that male and female DNA was present on the swabs. (Doc. 29 at 5.) The lab determined that Jane Doe and First are the contributors by a likelihood ratio of 470 billion and "very strong support for inclusion." (*Id*.)

## LEGAL STANDARD

The Fourth Amendment guarantees the right to be free from unreasonable search and seizure. The Fourth Amendment's "overriding function" protects personal privacy and dignity against unwarranted intrusion by the State. *Schmerber v. California*, 384 U.S. 757, 767 (1966). Searches and seizures conducted without a warrant remain presumptively unreasonable. *Kentucky v. King*, 563 U.S. 452, 459 (2011). The Government may overcome this presumption, however, as "the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Id.*

A warrantless search of a person "is reasonable only if it falls within a recognized exception[,]" such as emergency, exigency, or consent. *Missouri v. McNeely*, 569 U.S. 141, 148 (2013) (citing *United States v. Robinson*, 414 U.S. 218, 224 (1973)); *see also Espinosa v. City & County of San Francisco,* 598 F .3d 528, 533 (9th Cir. 2010) (called into question on other terms); *see also United States v. Chan-Jimenez*, 125 F.3d 1324, 1326 (9th Cir. 1997). In order to establish the validity of a consent to search, the government bears the heavy burden of demonstrating that the consent had been freely and voluntarily given. *Schneckloth v. Bustamonte,* 412

U.S. 218, 222 (1973). The Government also must establish the effectiveness of a third party's consent to a search of a defendant's property. *United States v. Brown*, No. CR 14-125-BLG-SPW-2, 2015 WL 3562558, at \*2 (D. Mont. June 5, 2015) (*citing United States v. Welch*, 4 F.3d 761, 764 (9th Cir. 1993)).

A third party has actual or express authority to consent to a search if the third party has "shared use and joint access to or control over a searched area" or "the owner of the property to be searched has expressly authorized a third party to give consent to the search." *Welch,* 4 F.3d at 764. The evidence discovered through the "exploitation of" the illegal search must be suppressed as "fruit of the poisonous tree[,]" if a search is conducted without a warrant absent an exception to the warrant requirement. *United States v. Morales*, 252 F.3d 1070, 1073 (9th Cir. 2001) (citing *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)).

## ANALYSIS

First argues that the officers' warrantless entry into the residence proves unlawful because no exigent circumstances existed and the officers did not ask for consent to search the residence. (Doc. 45 at 3.) First asserts that no signs were presented that the officers or Doe were in danger as they stood outside the residence. (*Id*.) First contends that no evidence existed that he would flee because he was at his residence. (*Id*.) First further argues that no indications existed that evidence would be lost, destroyed, or removed during the time required to obtain a

search warrant and that it would have been possible to obtain a telephonic search warrant. (*Id*.)

First asserts that protections against warrantless searches of the home apply even when there exists probable cause to arrest someone. (*Id*. at 5, citing *Payton v. New York*, 445 U.S. 573, 576 (1980).) First argues that his statements at the tribal jail were "derived immediately after [the] officers' unlawful entry and unauthorized arrest[,]" and, therefore, his statements should be excluded as fruit of the poisonous tree. (*Id*. at 5-6.) First specifically asserts that his consent to the penile swab is tainted and both his statements, and the results of the swab, should be excluded. (*Id*. at 6-7.)

The Government asserts that Jane Doe consented to the officers' entry into the residence. (Doc. 50 at 4.) The Government argues, in the alternative, that "[e]ven if First's arrest was improper, suppression of evidence obtained once he was in lawful custody is not the appropriate remedy" because "'evidence obtained during the time that [the defendant] was in lawful custody was not tainted by the earlier unlawful entry into his residence,' where the arrest was supported by probable cause." (Doc. 50 at 2, quoting *United States v. Crawford*, 372 F.3d 1048, 1056 (9th Cir. 2004) (en banc).)

The Government contends that First's statement outside his residence is admissible because the officers had probable cause to arrest First based on Doe's

5

identification of him so custody of First did not prove unlawful. (Doc. 50 at 5-7, citing *New York v. Harris*, 495 U.S. 14, 19 (1990).) *Harris* concluded that the defendant's statement made outside the house following arrest "was not the fruit of the fact that the arrest was made in the house." (Doc. 50 at 6, quoting *Harris*, 495 U.S. at 20.) *Harris* distinguished the defendant's statement made outside the house from "any evidence found, or statements taken, inside the home[,]" which would be subject to the exclusionary rule. (Doc. 50 at 6, quoting *Harris*, 495 U.S. at 20.)

*Crawford* states that evidence obtained as the product of illegal searches and seizures represents "fruit of the poisonous tree," warranting application of the exclusionary rule if, "granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." 372 F.3d at 1054 (quoting *Brown v. Illinois,* 422 U.S. 590, 599 (1975)). "The exclusionary rule requires a causal connection between the illegal conduct and the evidence sought to be suppressed." *Crawford*, 372 F.3d at 1054. *Crawford* applied this analysis to an illegal arrest and considered whether to exclude the defendant's later statements to the FBI outside his home. *Id*.

*Crawford* highlighted three facts that bear similarity to this case. *Crawford* noted that the police had probable cause to arrest the defendant when they entered his home, the police search of the home yielded no evidence of an old crime, and

the defendant made no incriminating statements before reaching the FBI office and had not been substantively questioned before reaching the FBI office. *Id*. *Crawford* emphasized that the presence of probable cause was an important factor distinguishing the case from previous cases where officers had arrested defendants seemingly with the hopes to turn up something incriminating. *Id*. (citing *Harris*, 495 U.S. at 21). *Crawford* determined that "[a]fter *Harris,* the presence of probable cause to arrest has proved dispositive when deciding whether the exclusionary rule applies to evidence or statements obtained after the defendant is placed in custody." *Crawford*, 372 F.3d at 1056 (citing *United States v. Villa–Velazquez,* 282 F.3d 553, 556 (8th Cir. 2002) (concluding the same)).

The Court concludes that the facts here do not prove sufficiently distinguishable from *Crawford* to justify straying from the precedent. First's later statements at the jail appear sufficiently attenuated from the officer's warrantless entry into the home and it seems that we are past the "point of diminishing returns" as it concerns "the deterrence principle inherent in the exclusionary rule." *Crawford*, 372 F.3d at 1092 (Fletcher, J., dissenting) (quoting *United States v. Ienco,* 182 F.3d 517, 526 (7th Cir. 1999)). First's statements and subsequent penile swab would not be subject to the exclusionary rule regardless of whether the officers' warrantless entry of the residence was permitted through Jane Doe's consent or another exception. The Court again counsels law enforcement, that in

the future, situations such as this would be less ambiguous should officers obtain a warrant or inform defendants of their rights, and in particular, their *Miranda* rights. (*See generally* Doc. 36 at 9-10.) The Court will deny First's second motion to suppress.

Accordingly, **IT IS HEREBY ORDERED** that First's Motion to Suppress (Doc. 44) is **DENIED** in accordance with the above order**.**

**DATED** this 25th day of March, 2026.

Brian Morris, Chief District Judge
United States District Court